[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter first came to the court by virtue of summons and CT Page 554 complaint dated December 28, 1998 and returnable January 26, 1999, in which complaint the plaintiff wife sought a dissolution of the marriage, joint legal custody, child support, alimony; exclusive use and possession of the marital home, an assignment of defendant's interest in the marital residence and allocation of debt, an equitable division of the property and such other relief as the court deems fair and equitable.
A motion for joint custody, child support, alimony and allocation of debt pendente lite accompanied the complaint along with a motion for exclusive use and possession and an affidavit in compliance with Connecticut General Statutes (C.G.S.) § 46b-99.
The usual preliminary orders accompanied the complaint.
On January 5, 1999 there was filed a lis pendens by the plaintiff with regard to certain real estate known as 168 Reutemann Road in North Stonington.
On January 26, 1999 the defendant appeared by counsel and filed an answer and a cross complaint in which cross complaint the defendant claimed a dissolution of the marriage, custody of the minor child, support for the minor child, allocation of debts, equitable division of all real and personal property and such other relief as the law or equity may appertain.
The defendant filed certain motions including motion for custody of the minor child and a motion to appoint an attorney for the minor child. A request for conciliation was also filed by the defendant, which motion for conciliation was granted on January 26, 1999.
On March 22, 1999 Attorney Timothy Lenes was appointed as counselor for the minor child by the Court, Mihalakos, J.
Certain motions were filed by the plaintiff on May 12, 1999 including a motion for exclusive use and possession of the premises, joint custody, child support, temporary alimony by virtue of a motion dated July 19, 1999.
On August 23, 1999 the Court, Hurley, J. entered an order requiring the defendant to pay the plaintiff $75.00 a week in alimony. The amount being set at that level in consideration of the child support guidelines. CT Page 555
On July 16, 1999 a stipulation bearing the same date was approved by the Court, Solomon, J., to the following effect: joint legal custody of the minor child, Aaron, shall be shared between the parties. Primary physical residence of the minor child for continued school attendance shall be with the father. Mother shall have reasonable rights of access with the minor child including but not limited to the following: one or two overnight weekly visits with at least one per week, and an opportunity to have dinner with the young man. The overnight visit shall be scheduled between Aaron and his mother and shall not interfere with his academic or athletic schedules. The defendant father shall not interfere with any arrangement between mother and minor child. These orders to become effective upon the plaintiff establishing her own residence. This stipulation has the signatures of the plaintiff the defendant, their respective counsel, and counsel for the minor child, Attorney Lenes.
On August 9, 1999 a stipulation was executed by the plaintiff and the defendant with their respective attorneys to the following affect.
The parties shall submit to binding arbitration regarding any and all items of personal property. They shall equally divide costs of said arbitration. The plaintiff shall vacate the marital home upon completion of the arbitration and receipt of results. The plaintiff shall receive $3,500.00 from the defendant one day prior to her moving out of the marital home. Said $3,500.00 shall be considered an advance on the property settlement. The plaintiff's motion for alimony shall be continued two weeks and heard at the same time as defendant's motion for support. The defendant shall provide documentation concerning the costs for medical insurance for himself and the minor child.
Financial affidavits were provided by each of the parties at the time of the August 9, 1999 stipulation.
The plaintiff and the defendant with their respective counsel and witnesses appeared before the court on December 17, 1999 and the matter was heard to a conclusion.
The Court makes the following findings of fact.
The plaintiff, whose maiden name was Joann Deveau, and the defendant were joined in marriage at Montville on August 6, 1977. CT Page 556
Both of the parties have resided in this state for more than one year prior to the initiation of the subject complaint.
The marriage between the parties has irretrievably broken down with no reasonable prospect for reconciliation.
There is one minor child issue of this marriage by the name of Aaron M. Pillar born May 13, 1983. The young man is presently age 16.
There was another child born of this union who is now an adult, a daughter, age 19.
Neither of the parties have been the recipient of welfare from the State of Connecticut or any town, city, municipality or subdivision thereof.
The plaintiff is age 42.
The plaintiff was age 19 when she entered into the marriage.
The defendant is age 45 and was age 22 at the time of the marriage.
The plaintiff has worked from time to time as a pre-school teacher at an earlier time in the marriage around 1980. After 1983, the plaintiff remained at home with the children until Aaron reached age 5.
The defendant works at a body shop and now holds a managerial position with his employer.
The plaintiff over the years was successful in securing an associate's degree from a recognized educational institution. It took her six to seven years to achieve that degree.
The defendant apparently did not actively support the plaintiff in her educational quest.
On occasion the plaintiff has also worked at her mother's gift shop. This amounting to one day a week to earn money for school.
The plaintiff's parents on occasion have loaned her funds in order that she might continue with her education. CT Page 557
In the Spring of 1993 the plaintiff finished her requirements for a bachelor of arts degree and in 1994 started doing substitute teaching in the town of North Stonington, where she earned $55.00 a day.
In 1998 she secured her first full-time teaching position as a sixth grade teacher at the Chiaro School earning $23,000.00 a year. This teaching assignment was apparently very stressful for the plaintiff, the classes were large, sometimes 90 or more students and there were problems with those that supervised her. In due course, the plaintiff resigned from that teaching position. She sought other work including summer time jobs and at one point worked at the Mystic Seaport.
The plaintiff presently teaches at the Plainfield Catholic School as a second grade teacher. The job is apparently going well. Her annual salary according to testimony is $16,500.00, receiving $292.24 weekly net. The plaintiff is now covered under the school's medical program. Mindful of the academic year, the plaintiff intends to work during the summer at other worthwhile projects.
The home of the parties was purchased in 1979 and the parties have resided in the marital home for the last 20 years.
The plaintiff has assisted in improvements to the home. The plaintiff has done, in addition to other activities, volunteer work at book fairs, she has been a Girl Scout leader, a bible school teacher, and a music booster volunteer worker.
Problems started to develop of a serious nature in the early 1990's. There were periods of time where there would be angry words between the parties and long periods of time would elapse where the defendant would not speak to the plaintiff. The social life of the parties was minimal.
The plaintiff's claim is to the effect that the defendant did not relate to her emotional needs. The plaintiff suggested marriage counseling and the defendant declined that proffer.
The plaintiff's claim aside from problems between the adults was also to the effect that the defendant did not help with regard to matters such as homework assignments for the children in their earlier years. CT Page 558
In December of 1996 the marriage apparently finally broke down. The parties had not spoken to each other for over a month. The plaintiff went to a marriage counselor in New London on two occasions.
In the last two years the defendant has accused the plaintiff of having an affair outside the marriage with a member of the music booster's club. The plaintiff who professes that this was no more than a friendship on one occasion invited the friend to their home for a dinner. The defendant and the children were there but apparently the matter did not turn out well and the defendant continued with his accusations.
The defendant presented an ultimatum to the plaintiff that she had to "choose" between him and the music program friend". On one occasion apparently the defendant called the friend and inquired as to his intentions concerning the plaintiff.
The plaintiff and the defendant had discussions looking toward a petition for a dissolution of the marriage. The defendant told the plaintiff that she might as well proceed because he would be with another woman by next summer.
The defendant took certain personalty from the plaintiff including her phone directory and some bank records. In addition, the defendant threatened to call the school authorities and indicate to them that the plaintiff was not a suitable person to be teaching.
The plaintiff vacated the marital home due to constant verbal abuse and like conduct including the defendant locking the food freezer, blocking her automobile with his, his accusation of her having dates and the accusations being made in the presence of the one minor child and the adult child.
The defendant requested that the plaintiff vacate and the plaintiff did so.
The plaintiff vacated the marital residence in August.
The plaintiff sees a counselor once a month and now has an apartment in Gales Ferry that has two bedrooms.
As earlier indicated, an attorney for the minor child Aaron was CT Page 559 appointed.
The plaintiff is willing to quit claim her interest in the marital residence to the defendant as long as she receives a suitable sum for doing so and the plaintiff has indicated a willingness to defer receipt of her entire equity interest in the property until the minor child Aaron graduates from high school.
Incident to the plaintiff achieving her bachelor's degree, many of her classes were in the evening so that she could look after the family interests while trying to secure her education.
The plaintiff secured loans for educational purposes from her parents during her quest for the bachelor of arts degree.
It appears that the defendant did not directly contribute to any of the plaintiff's educational expenses.
For a time when she vacated, the plaintiff resided with her parents but did not pay them anything for providing room and board.
Incident to her termination of employment with the Chiaro School district, the plaintiff received the sum of $3,000.00 incident to that termination.
As concerns the above-noted attempt at counseling, it appears that on at least one occasion the defendant did accompany the plaintiff to counseling in New London but after a short interval stormed out of the session leaving the plaintiff to fend for herself in terms of returning to the home.
It appears that the minor son Aaron who has been residing with the defendant for some time, is doing well at school.
The older child issue of this marriage is now 19 and attending college.
There is some suggestion in the testimony that the minor child Aaron may have a problem entitled Attention Deficit Syndrome incident to his school work.
The plaintiff does not take any medication but does take certain herbs incident to maintaining her well being. CT Page 560
The plaintiff indicated that the defendant did not abuse alcohol. The plaintiff indicated that there had been no physical intimacy between the parties for many years.
The plaintiff describes the state of her health as being excellent.
As noted, there were two children of this union. The daughter now age 19 by the name of Melanie and the son Aaron, age 16.
The daughter apparently is in good health and attends college. The son Aaron is indicated to be in good health. He is a junior in high school at the Wheeler High School in North Stonington.
This is the first marriage for both of the parties.
The defendant is employed by Grossman Chevrolet Nissan in Old Saybrook, Connecticut. He has been employed by that company for 15 years plus. He receives a weekly salary and bonus, the bonus being determined on the basis of net profit of his unit. The bonus is paid once a month. Last month the defendant's bonus amounted to $700.00±. His projected earnings for 1999 are to the amount of $45,000.00. The defendant has available to him a car provided by his employer and his employer pays the insurance on the car for him.
The defendant concurred in the belief that the marriage has irretrievably broken down. All told, the defendant has been engaged in the work that he does as body shop manager for a total of 26 years, having other employment prior to Grossman Chevrolet.
The defendant puts in long hours, often times working as many as 60 or 70 hours a week.
The defendant's claim was to the effect that the plaintiff's termination from the Chiaro School district, which was in Rhode Island, was as a result of her not being competent but the issue with regard to the reason for the plaintiff's termination were not pressed.
The defendant is age 45.
He is a lifelong resident of Norwich and as indicated has done body work for most of his adult life. CT Page 561
The marital home was purchased by the parties in 1978. It is the defendant's claim that the plaintiff has never made a financial contribution with regard to the home and that he provided the original deposit of $7,278.00.
During the marriage the plaintiff handled the money and the defendant had a sum certain each week for spending.
Apparently on the occasion of the defendant attending the counseling session in New London, it was the plaintiff who indicated that the marriage had come to such a state that it could not be preserved.
During this marriage there were no physical altercations, primarily a lack of communication between the parties, long periods of silence and some arguments and verbal altercations.
The defendant indicated that after the dissolution he would seek a friendship elsewhere.
The defendant represented that the marital premises needs certain improvements including a new roof, a new septic system and a new furnace.
The home of the parties at the time that they purchased it was 30 years old. From the testimony of J. Leonard Deveau of Wyoming, Rhode Island, the Court finds that he is the father of the plaintiff and resides a short distance away from the marital home; that he has been a frequent visitor in the home over the years; that the plaintiff has confided in him with regard to problems in the marriage. This witness indicated that there were periods of as long as four or five weeks when there were no words spoken between the parties. The witness even offered his services as a mediator or counselor but to no avail.
The witness Deveau described instances of verbal abuse and its effect on the children.
From the exhibits, including the financial affidavits submitted by the parties, the Court makes the following findings.
The plaintiff who is employed as a second grade school teacher at the Plainfield Catholic School receives a weekly gross wage of $375.00; total deductions therefrom, $82.76 for a net of $292.24. CT Page 562
The plaintiff shows her weekly expenses as amounting to $423.22.
The plaintiff has debt to the amount of $8,259.00, which debt includes a $5,000.00 loan from her parents.
The plaintiff values the real estate of the parties at 168 Reutemann Road in North Stonington at $105,000.00 with a mortgage of $25,000.00, for a total equity of $80,000.00.
The plaintiff has a 1991 Plymouth Voyager automobile free and clear and a 1993 Chevrolet Cavalier free and clear.
There's also a Jeep Wrangler, a computer and a ski boat which the plaintiff shows on her affidavit. It is the court's impression that the Jeep and the computer are items used by the adult daughter and the ski boat is actually an asset of the defendant's.
The plaintiff shows $3,000.00 in her savings/checking and 39 shares of Northeast Utilities stock for a value of $615.00.
The plaintiff has a modest retirement fund amounting to $1,400.00 and values jewelry at $1,000.00.
The defendant's financial affidavit reflects he is the body shop manager at Grossman Chevrolet. Gross weekly wage of $720.00, deductions $262.80, for a net of $457.20. In addition, he receives certain commissions which are paid once a month depending upon the profit nature of his department at the dealership. This averages to about $101.00 a week, gross, further deductions of $11.65, for a net of $89.35, total net weekly income of $546.55.
He shows weekly expenses of $483.00 and debt of $12,038.00, including debt incurred incident to the adult daughter's education of $8,000.00.
The defendant values the Reutemann Road property at $95,000.00 with a mortgage of $25,000.00, for a total equity of $70,000.00.
According to the defendant's affidavit, the 1990 Jeep is in his name free and clear, valued at $2,000.00 and there's a 1986 Bronco for which no value is shown. CT Page 563
The defendant values a 1986 19-foot glass stream boat at $2,500.00, home furnishings value unknown. The defendant has $850.00 in checking, apparently some Northeast Utilities stock which is not valued, life insurance with a current cash value of $1,593.00.
The defendant has an IRA and a 401K which totals $16,811.00.
There is a State of Connecticut income tax rebate in the amount of $100.00.
The defendant husband's education extended to completing high school.
See Plaintiff's Exhibit 1 with regard to statement as to the weekly earnings of the plaintiff while at the Chiaro Regional School District and Plaintiff's Exhibit 2 for her periodic compensation from the Plainfield Catholic School.
Plaintiff's Exhibit 3 statement from the Plainfield Catholic School indicates and verifies that the plaintiff's weekly gross pay is $375.00, her weekly net is $292.24.
Plaintiff's Exhibit 4 verifies and substantiates the plaintiff's compensation from the Plainfield Catholic School where her annual salary is $16,500.00.
Her compensation includes the plaintiff being provided with medical insurance benefits.
Plaintiff's Exhibit 8 is an appraisal of the property known as 168 Reutemann Road in North Stonington. The appraisal was done by the Reiss Appraisal Company as of May 24, 1999. The appraiser, James B. Blair, valued the property as of the above-noted date at $105,000.00.
The appraisal appears to be detailed and complete and contains photographs and comparables. The appraisal also includes colored photographs of the subject premises that properly depict the same.
Plaintiff's Exhibit 10 is a detailed collection of payroll statements from Grossman Chevrolet-Nissan as concerns the defendant. CT Page 564
Defendant's Exhibit A is a verification of the information contained on the defendant's financial affidavit, a payroll earning statement from Grossman Chevrolet-Nissan.
Defendant's Exhibit B is the settlement statement preserved from September 18, 1978 as concerns the purchase of the home on Reutemann Road which was originally acquired for the sum of $35,000.00.
Plaintiff's Exhibit 9 is a verification to plaintiff's counsel from Grossman Chevrolet-Nissan indicating that the defendant is a salaried employee, receives no overtime compensation, but that he does receive a monthly commission that is based on his department's profit margin.
 Discussion
This is a marriage of 22 years; the first marriage for both.
Two children issue of the relationship. The daughter Melanie, age 19 and the son Aaron, age 16.
Both of the parties appear to have worked hard either at outside employment or in keeping and maintaining the home and trying to properly raise the children.
The plaintiff wife through her own efforts has in addition to being a parent and spouse educated herself so that she now has a bachelor's degree and is certified for teaching and holds a present teaching position in the Catholic school system teaching the second grade.
The defendant has apparently worked hard all his life and is well versed in body repairs and has a long and continuous association with regard to his present employment at the Grossman Chevrolet-Nissan facility.
There is now a fairly wide gap education wise between the parties which perhaps has been a cause for some dissension.
There have been no instances of physical violence. The parties seem to have drifted or grown apart with extended periods of time where there has been little or no communication between them.
The parties have apparently been good parents, having in mind CT Page 565 that the adult daughter is attending college and the son Aaron is doing well academically in the high school.
The friendship developed by the plaintiff wife outside the marriage appears to be of a platonic nature. There is no indication that it has gone beyond that in terms of any credible evidence presented to the court.
Both of the parties appear to be genuinely motivated and interested with regard to seeing that the children are educated. Neither has accumulated very much in the way of this world's goods.
 The Law
The Court has considered all of the statutes which apply in matters of this nature including C.G.S. § 46b-82 regarding alimony and § 46b-84 as concerns support.
The Court has considered all of the applicable case law that governs the matter.
The Court has considered the testimony of all witnesses, their candor or lack thereof, and all exhibits and the arguments of counsel.
The Court has considered the length of the marriage, the problems with which it was beset, the age., health, station, occupation, employability, estate and the needs of the parties based on what is available to the Court.
The Court has considered the standard of living of the parties as best it can and the present financial situation that exists.
The Court enters the following orders.
The plaintiff and the defendant shall share joint legal custody of the minor child Aaron M. Pillar now age 16. The primary physical custodial parent of the minor child Aaron shall be with the defendant father mindful of the stipulation entered into before the Court and as set forth and expressed in the stipulation dated July 16, 1999, which stipulation was approved and accepted by both the plaintiff and the defendant, their respective attorneys, and the attorney appointed for the minor child. CT Page 566
One of the primary reasons for the father being the primary custodial parent is for the continued present school attendance involving the young man.
The plaintiff mother shall have reasonable rights of visitation and access with the minor child including but not limited to the following: a) one or two overnight weekly visits with at least one per week, b) one weekly dinner, either during weekdays, school or non-school time on weekends. The overnight visit shall be scheduled between the child Aaron and his parent mother and shall not interfere with his academic or athletic schedules. The defendant father shall not interfere in any way with arrangements made between the plaintiff mother and the minor child Aaron.
As to the issue of support for the minor child Aaron, from the plaintiff mother to the defendant father mindful of the custodial parent arrangement, said order on the basis of the guideline worksheet would be $58.00 per week. The Court rather than entering a direct order of support will factor that obligation into its order with regard to alimony as hereinafter set forth.
As to medical insurance for the minor child, the Court directs that the defendant shall provide medical and dental insurance coverage for the child as available to him incident to his place of employment and any uncovered expenses, medical or dental, that are incurred and not subject to being reimbursed, shall be apportioned as follows: 25% of any unreimbursed healthcare costs to the plaintiff and 75% to the defendant.
As to the issue of personal property, the parties undertook binding arbitration with regard to the resolution of any issues pertaining to personal property and further agree that any costs incident thereto would be equally divided and apportioned and the Court therefore enters no formal order incident thereto.
The defendant shall be entitled to take the minor child Aaron as an exemption for income tax purposes during the remainder of the child's minority. The defendant shall maintain the existing life insurance policy that is shown on his December 17, 1999 financial affidavit with Metropolitan Life in the face amount of $36,000.00 with the plaintiff being the designated beneficiary thereof for such time as he is obligated to pay alimony as hereinafter set forth. CT Page 567
The Court is mindful of the contents of plaintiff's claim for relief incident to college expenses for the children, but mindful of the fact that there is no written agreement executed by both of the parties, the Court cannot enter any order incident to prospective college expenses and can merely proceed in the hope that the parties, out of an abiding love and affection for the children, including the adult daughter, will do what they can to see that the children are properly educated.
In the same vein, plaintiff's suggestion with regard to the tax exemption as to the adult daughter Melanie is beyond the Court's authority under the existing circumstances.
As to the real estate jointly owned by the parties situated at 168 Reutemann Road in North Stonington, the Court directs that the plaintiff shall transfer and set over by proper written instrument either quitclaim or warranty deed all of her right, title and interest in the property to the defendant. The defendant husband shall assume and agree to pay the outstanding and existing mortgage on the property and hold the plaintiff wife harmless therefrom. In addition, mindful of the above order, the defendant shall, within the next 120 days, undertake to refinance the mortgage on the subject premises. The equity in the same according to the real estate appraisal, an exhibit in these proceedings, being to the amount of $80,000.00, the defendant shall refinance to seek a mortgage that will allow for the defendant to pay to the plaintiff in consideration of the transfer of title of the subject real estate the sum of $40,000.00; this representing one-half of the equity in the property as reflected by the appraisal. The payment from the defendant to the plaintiff, in any event, to be accomplished within six months of the date hereof.
The Court is mindful of the suggestion that a sum certain be paid at this point and the balance paid at the time that the minor child Aaron attains his majority or graduates from high school but the Court sees no useful purpose to be served by going through the same process twice with the attendant costs incident thereto.
Given the considerable disparity as to the incomes of the parties, the length of the marriage and other considerations, the Court grants the plaintiff alimony in the amount of $100.00 per week for a term of four years. The amount is arrived at mindful of the prior reference to the Court order for support that would CT Page 568 ordinarily be in effect. The alimony to terminate upon the death of the plaintiff, her remarriage or cohabitation with an unrelated male as provided under the statute during the term. The award of alimony is non-modifiable as to term but not to as amount.
It is the Court's impression that the plaintiff has presently in place for her own welfare and benefit, medical coverage for herself.
The Court enters no order with regard to attorney's fees. Each party to be responsible to counsel that have represented them.
The plaintiff may retain her Chelsea Groton Savings account indicated to be $3,000.00. The plaintiff may retain the 39 shares of Northeast Utilities that she has. The plaintiff shall be entitled to one-half of the IRA CD held by Chelsea Bank, which according to the financial affidavit is to the amount of $11,654.00.
Each party, the plaintiff and the defendant, may retain their own 401K. The defendant may retain the State of Connecticut income tax rebate. The plaintiff may retain her jewelry. The defendant shall be entitled to a credit of $3,500.00 incident to these orders by virtue of the plaintiff's earlier receipt of said sum.
The automobiles and personalty have already been the subject of an agreement as to mediation and no further order is necessary by the Court.
The Court grants the relief prayed for, dissolves the marriage on the grounds of irretrievable breakdown, declares the parties to be single and unmarried pursuant to the provisions of the statute.
Austin, J.